UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DURECO KEONNE BROWN,

    Plaintiff,

v.                                          Case No. 3:15cv178/LC/CJK

M. WHITE,

    Defendant.
_____/

REPORT AND RECOMMENDATION

This matter is before the court upon defendant White's "Motion to Dismiss/Motion for Summary Judgment." (Doc. 21).[1] Plaintiff has responded in opposition. (Doc. 26). The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon careful consideration of the record, the parties' submissions, and the relevant law, the undersigned recommends that defendant White's motion for summary judgment be granted.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, a prisoner of the Florida Department of Corrections, commenced this

---

[1] The references to document and page numbers will be to those automatically generated by the CM/ECF system.

action on April 15, 2015, by filing a civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. 1); *see Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (Under the "prison mailbox rule," a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.). The amended complaint, the operative pleading in this action, names Melissa White as the sole defendant. (Doc. 5, p. 1-2). According to the amended complaint, White, a nurse at Blackwater River Correctional Facility ("BRCF"), violated plaintiff's rights under the Eighth Amendment by failing to issue a low bunk pass despite plaintiff's back condition. (*Id.*, p. 6-8). Plaintiff claims White's actions caused him to fall from his top bunk on February 23, 2015, and injure his head and back. (*Id.*, p. 7). For relief, plaintiff seeks $290,000 in compensatory damages, $315,000 in punitive damages, nominal damages, recovery of his costs, and any other relief deemed proper. (*Id.*, p. 8).

On August 5, 2015, defendant White filed a "Motion to Dismiss/Motion for Summary Judgment." (Doc. 21). The court issued an advisement order concerning summary judgment. This order provided the parties with information concerning Rule 56 review. (Doc. 25). Defendant White argues plaintiff's complaint should be dismissed because he failed to exhaust his administrative remedies. (Doc. 21). Alternatively, defendant claims she is entitled to summary judgment because the

evidence does not establish an Eighth Amendment violation. (*Id.*). Plaintiff filed his response to defendant White's motion on August 19, 2015. (Doc. 26).[2]

## FACTS

The following fact averments are drawn from plaintiff's verified amended complaint (doc. 5) and the evidence in the summary judgment record (docs. 21, 26). *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding that specific facts pled in a sworn complaint must be considered in opposition to summary judgment). Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *See Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005).

Plaintiff is an inmate of the Florida Department of Corrections. On May 12, 2013, he slipped and fell down a flight of stairs at Santa Rosa Correctional Institution ("SRCI"), injuring his neck and lower back. (Doc. 5, p. 6). He was taken to SRCI's medical department, where Nurse M. Hardin completed a Back Pain Protocol form

---

[2] Because plaintiff cannot establish defendant White's actions violated the Eighth Amendment, an extensive discussion of the exhaustion issue is omitted. The record reflects, however, that the response to plaintiff's grievance appeal is dated April 17, 2015. (Doc. 26, p. 27). Because plaintiff initiated this action on April 15, 2015 (doc. 1, p. 1)–before he received the appeal response–he failed to properly exhaust his administrative remedies before bringing suit. *See Mason v. Bridger*, 261 F. App'x 225, 228 (11th Cir. 2008) ("Exhaustion is a precondition to litigation in federal courts, and courts do not have the discretion to waive the § 1997e(a) requirement.").

Case No. 3:15cv178/LC/CJK

detailing plaintiff's condition. (Doc. 26, p. 15). Plaintiff reported experiencing a "pinching" pain in the lumbar and sacral regions of his spine that radiated upwards. (*Id.*). Plaintiff rated the pain as a ten on a scale of one to ten. (*Id.*). Repositioning his body exacerbated the pain but laying on his back alleviated it. (*Id.*). Plaintiff was not experiencing numbness or tingling in his extremities. (*Id.*). His vital signs were normal and Hardin's back examination found no swelling or bruising. (*Id.*). Under the "Findings Requiring Immediate Clinician Notification" section of the form, Hardin checked a box labeled "severe back pain" and handwrote the word "subjective." (*Id.*). A diagram of the injury indicated plaintiff complained of pain in his neck and lower back. (*Id.*, p. 16). Plaintiff concludes he had "nerve and muscle damage in his back" as a result of the May 12, 2013 fall. (Doc. 5, p. 6).

On January 26, 2015, plaintiff was transferred to BRCF. (Doc. 21-1, p. 3). The Health Information Transfer/Arrival Summary form indicated plaintiff was not being treated for medical problems at the time of his transfer. (*Id.*). He was not receiving care from the chronic illness clinic and he did not have any current medical complaint. (*Id.*, p. 3-4). Plaintiff was receiving one medication, that being Colace, a stool softener. (*Id.*, p. 3).

On January 27, 2015, plaintiff submitted an Inmate Sick Call Request, describing his request as follows:

> I have very bad back pain in my lower back due to an accident 5/12/13 when I slipped down and fell down the stairs while in hand restraints. I am currently assigned to a top bunk, and due to me having to jump down and up it causes the pain to increase, and I ask that I be granted a pass for bottom bunk due to these problems and pains in my lower back.

(Doc. 21-1, p. 5).

Before defendant White examined plaintiff, she reviewed his inmate medical file. (Doc. 21-2, p. 1). Defendant noted plaintiff "made a number of requests for housing assignment changes at his previous facility due to alleged back pain," but all the requests had been denied. (*Id.*). Defendant "found no medical diagnosis or other objective evidence within [plaintiff's] file of any serious medical issue involving [plaintiff's] back."[3] (*Id.*).

---

[3] Plaintiff claims he "was diagnosed with a chronic back injury condition/lumbar and sacral back damage/mild scoliosis before his arrival at Blackwater River C.F. on 1/26/15." (Doc. 26, p. 4). That claim is not supported by the evidence he cites, or any other evidence. Nurse Hardin did note plaintiff presented subjective complaints of pain in the lumbar and sacral regions of his back following a fall at SRCI on May 12, 2013. (Doc. 26, p. 15-16). There is no evidence, however, that Nurse Hardin or any member of SRCI's medical staff diagnosed plaintiff with a "chronic back injury." Similarly, plaintiff cites a March 20, 2015 Back Pain Protocol form to show the existence of the scoliosis diagnosis. (Doc. 26, p. 32). That form was completed after plaintiff's arrival at BRCF and after an X-ray was taken that revealed the scoliosis. (*Id.*). Thus, there is no evidence plaintiff had a diagnosed back condition before he saw defendant White on January 29, 2015.

Case No. 3:15cv178/LC/CJK

On January 29, 2015, defendant conducted an examination of plaintiff and completed a Back Pain Protocol form. (Doc. 21-1, p. 6-7; doc. 21-2, p. 1-3). Plaintiff reported "very bad back pain" that began in 2013; he rated his pain level as a four on the one to ten scale. (Doc. 21-1, p. 6). Plaintiff informed White he was at risk of injuring himself because the back condition limited his mobility and made it difficult to climb on and off the top bunk. (Doc. 5, p. 6). Plaintiff requested a low bunk pass from White. (*Id.*, p. 6-7). White noted plaintiff was not currently on medication and had a history of "hyperlipidemia" and "PFB." (Doc. 21-1, p. 6). White checked a box indicating plaintiff did not have a history of "back pain/back problems." (*Id.*). Plaintiff described his back pain as a "pinch" in the lumbar region of his spine. (*Id.*). Moving increased the pain but laying down relieved it. (*Id.*). Plaintiff indicated he was experiencing numbness and tingling in his back and muscle spasms "somewhat," but no numbness or tingling in the extremities. (*Id.*; doc. 26, p. 4-5). White noted plaintiff's gait and vital signs were normal and his back exhibited no swelling or bruising.[4] (Doc. 21-1, p. 6; doc. 21-2, p. 2). White also noted plaintiff jumped on the

---

[4] Plaintiff asserts, without explanation or supporting evidence, that "White never observed Brown's gait[.]" (Doc. 26, p. 5). Although plaintiff might be able to recount what White did, he could not have the ability to opine on what she saw, unless he can explain in a nonconslusory fashion how he could have personal knowledge of someone else's observations.

exam table without difficulty and sat with slouched posture.[5] (Doc. 21-1, p. 6). White found no treatment was necessary but instructed plaintiff to limit his activity until the discomfort improved or return to medical if his symptoms worsened. (*Id.*, p. 19).

On February 19, 2015, plaintiff fell while exiting the shower. (Doc. 21-1, p. 8). He was taken to the medical department on a backboard with a cervical collar. (Doc. 21-1, p. 13). Plaintiff denied losing consciousness, but complained of neck pain. (*Id.*; doc. 21-1, p. 8). Nurse S. Melvin noted plaintiff's neck was "nontender on palpation" and there was "[n]o deformity." (Doc. 21-1, p. 13). Plaintiff denied numbness and tingling in his extremities and Nurse Melvin noted no neurological deficits, and no abrasions or contusions. (*Id.*).

On February 23, 2015, plaintiff attempted to climb up onto his top bunk. (Doc. 5, p. 7). He slipped and fell, injuring his head and back. (*Id.*). Plaintiff reported dizziness at the time of the injury but denied a loss of consciousness, nausea, or vomiting. (Doc. 21-1, p. 11). The examining nurse found no contusions, no

---

[5] On the Back Pain Protocol form, White wrote "jumps on table $\bar{s}$ difficulty" and "sits $\bar{c}$ slouched posture." (Doc. 21-1, p. 6). Plaintiff claims the "$\bar{s}$" stands for "slight" and the "$\bar{c}$" stands for "crouched." (Doc. 26, p. 4-5, 12). Plaintiff is mistaken. These are medical abbreviations that stand for "without" and "with," respectively. This is confirmed by defendant White's affidavit. (Doc. 21-2, p. 2).

abrasions, and "no point tenderness over site of reported head trauma location." (*Id.*). Nurse Melvin ordered an X-ray of plaintiff's spine and prescribed Motrin. (*Id.*; doc. 5, p. 7). Staff conducted neurological checks through the morning of February 24, 2015. (Doc. 26, p. 23).

The radiologist reported the following results from the X-ray:

<u>Cervical Spine 3 views:</u>

Vertebral body heights and disc spaces are normal. The odontoid is intact and there is no subluxation identified.

Opinion: Unremarkable exam

<u>Thoracic Spine 3 views:</u>

There is a slight levoscoliosis in the lower dorsal region that extends into a dextroscoliosis into the lumbar region. The thoracic body heights and disc spaces are maintained. Pedicles appear to be intact.

Opinion: Minimal levoscoliosis otherwise unremarkable exam

<u>Lumbar Spine 3 views:</u>

A dextroscoliosis extends into the lower dorsal region. Vertebral body heights are mainatined. Pedicles are intact. Disc spaces are normal and there is no subluxation identified.

Opinion: Dextroscoliosis otherwise unremarkable exam

(Doc. 21-1, p. 16).

On February 27, 2015, plaintiff visited the medical department and complained of "chronic lumbago." (Doc. 21-1, p. 17). The February 23, 2015 X-ray was noted as "essentially unremarkable other than noted scoliosis[.]" (*Id.*). Plaintiff had a

"normal gait, no lumbrosacral point tenderness or spasm, [and] no obvious deformity." (*Id.*). Plaintiff was assessed with mild scoliosis; he was prescribed Mobic and provided with a handout on back strengthening exercises. (*Id.*). Nurse Melvin, like defendant White, declined to provide plaintiff with a low bunk pass. (Doc. 26, p. 7).

Plaintiff fell off his top bunk again on March 20, 2015. (Doc. 21-1, p. 18). He visited the medical department with "mid back pain." (*Id.*). Nurse Howard noted plaintiff had a history of back pain with a diagnosis of scoliosis. (*Id.*). Howard also noted the back pain was treated with nonsteroidal anti-inflammatory drugs (Mobic). Plaintiff was advised to access sick call. (*Id.*, p. 19).

## DISCUSSION

Legal Standards

    A.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 160 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* An issue is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). Generally, a court must view the facts in the light most favorable to the non-moving party (here, plaintiff) and draw all reasonable inferences in favor of that party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). The court may not, however, accept any facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them]." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct.

1769, 167 L. Ed. 2d 686 (2007). Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011).

<u>Eighth Amendment Standard</u>

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). A § 1983 claim arises when prison officials act with deliberate indifference to an inmate's serious medical needs, which violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). "To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1307 (quotation omitted); *see also id.* (quoting *Farrow v. West*, 320 F.3d 1235,

1243 (11th Cir. 2003)) ("[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm.").

To show a defendant was deliberately indifferent, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (*quoting Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). To establish deliberate indifference, the defendant's response to the medical need must be more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and quotations omitted). Prison officials may avoid Eighth Amendment liability by showing, for example: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;" (2) that "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;" or (3) that "they

responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Application of Summary Judgment Standard to Plaintiff's Claims

Plaintiff alleges White's failure to issue a low bunk pass on January 29, 2015, caused his fall on February 23, 2015, and constituted a violation of the Eighth Amendment. (Doc. 5). The summary judgment evidence, however, fails to establish either that plaintiff suffered from a serious medical need or that defendant White was deliberately indifferent to that need.

As noted above, a serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann*, 588 F.3d at 1307. At the time White examined plaintiff on January 29, 2015, plaintiff did not have a diagnosed back condition and White observed no signs indicating plaintiff had a serious medical need. Although medical staff later assessed plaintiff with "mild scoliosis," (doc. 21-1, p. 17), there is no evidence plaintiff's back condition posed a substantial risk of serious harm if left unattended. Plaintiff's subjective complaints of back pain, which many adults experience, do not establish he suffered from a serious medical need. *See Burley v. Upton*, 257 F. App'x 207, 210 (11th Cir. 2007)

Page 14 of 17

(noting "lower back pain is not the type of serious condition this circuit requires" because, if left unattended, it does not pose a substantial risk of serious harm).[6]

Even if one were to assume a serious medical need, defendant White's failure to issue a low bunk pass did not rise to the level of deliberate indifference. Plaintiff's medical record reflects he experienced back pain following a fall on May 12, 2013. (Doc. 26, p. 15-16). The nurse who examined him, however, noted his complaints were "subjective." (*Id.*, p. 15). When plaintiff visited defendant White over a year later, he continued to complain of back pain and indicated he had difficulty climbing onto the top bunk. Because plaintiff's subjective complaints of back pain and limited mobility were not supported by White's observations or any objective findings, White did not issue a low bunk pass. Notably, White observed plaintiff "jump[] on the exam table [without] difficulty." (Doc. 21-1, p. 6). After her examination, White formed the opinion that plaintiff was not suffering from a serious medical condition that warranted treatment or a low bunk pass. (Doc. 21-2, p. 3). Although plaintiff disagrees with White's opinion, "a simple difference in medical opinion between the

---

[6] Plaintiff's claims regarding the severity of his back condition are also belied by the timing of his grievances. Although White examined plaintiff on January 29, 2015, plaintiff did not file a grievance concerning the medical staff's failure to issue a low bunk pass until March 22, 2015. If plaintiff's back condition was as severe as he asserts, one would assume he would have immediately grieved White's denial of the pass.

Case No. 3:15cv178/LC/CJK

prison's medical staff and the inmate" regarding the course of his treatment does not state an Eighth Amendment claim. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quotation marks omitted). Based on these facts, a reasonable jury could not conclude White knew her failure to issue the pass posed a substantial risk of serious harm to plaintiff and she disregarded that risk by conduct that is more than gross negligence. *See Redding v. Georgia*, 557 F. App'x 840, 844 (11th Cir. 2014) (finding allegation that prison officials assigned inmate to top bunk despite low bunk pass insufficient to state a claim and noting "[i]t may have been negligent to assign Redding a bunk contrary to his profile, but an Eighth Amendment claim requires conduct rising to a level above even gross negligence."); *Burley*, 257 F. App'x at 210 (plaintiff "failed to show that officials were anything more than negligent by keeping him in a top bunk for five days" despite fact he had a low bunk pass). White's failure to issue a low bunk pass was not "'so grossly incompetent, inadequate, or excessive as to shock the conscience or . . . be intolerable to fundamental fairness.'" *Wallace v.*

Case No. 3:15cv178/LC/CJK

*Hammontree*, 615 F. App'x 666, 667 (11th Cir. 2015) (*quoting Harris*, 941 F.2d at 1505). White's actions, therefore, do not constitute a violation of the Eighth Amendment.

Furthermore, if the court adopted plaintiff's view of deliberate indifference, prison staff would be required to issue low bunk passes (or other privileges) to any inmate claiming back pain, regardless of whether any objective evidence supported the provision of a low bunk pass. More generally, inmates could dictate their treatment through verbal complaints despite a lack of medical evidence supporting the inmate's preferred treatment. The Eighth Amendment does not impose such a requirement on prison staff (nor provide that luxury to prisoners).

Accordingly, it is respectfully RECOMMENDED:

1. That defendant White's motion for summary judgment (doc. 21) be GRANTED.

2. That the clerk be directed to enter judgment in favor of defendant White and against plaintiff and close the file.

At Pensacola, Florida, this 26th day of January, 2016.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 3:15cv178/LC/CJK

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.